ALFRED A. STEIN, JR., substituted administrator and trustee with the will annexed· of the estate of George Seeber, deceased, complainant-respondent,

*v.*

ELIZABETH TRUST COMPANY, a corporation, defendant-appellant.

[Submitted May 16th, 1939.   Decided October 16th, 1939.]

*Mr. Max L. Rosenstein,* for the respondent.

*Mr. Charles A. Otto, Jr.* (*Mr. Louis C. Lehman, Jr.,* of counsel), for the appellant.

The opinion of the court was delivered by

RAFFERTY, J.

The facts of this case, as found by the learned vice-chancellor, are as follows:

"By this bill complainant, the substituted administrator and trustee *cum testamento annexo* of the estate of George Seeber, deceased, seeks to compel the defendant, Elizabeth Trust Company, to return to him the sum of $14,771.84 alleged to have been wrongfully charged against the bank account of the former executors and trustees in payment of a promissory note of one of those executors bearing the endorsement of complainant's decedent. * * * The controversy arises out of the following circumstances:

"George Seeber, the testator, died on August 19th, 1930, leaving a considerable estate, including insurance moneys in excess of $160,000, and also a large amount of debts. He appointed his son, a daughter, and his attorney executors of his will, and trustees of his estate, and they duly took upon themselves the burden of the administration thereof, in the course of which they opened a bank account in the Peoples Banking and Trust Company of Elizabeth, New Jersey. That bank was closed in January, 1931, and at the time of its closing the executors had on deposit there the sum of $19,295.46. That bank's assets were later taken over by the defendant Elizabeth Trust Company and its liability to depositors assumed by that company. By virtue of this transaction the executors and trustees of this estate were, on August 21st, 1931, credited, on the defendant Trust Company's books, with a deposit of $19,295.46. At the time of testator's death, he was indebted to the defendant Trust Company upon a promissory note, of which the attorney executor was the maker and the decedent the endorser. The note, however, represented the personal indebtedness of the decedent. On the same day that the account of the executors and trustees in the defendant Trust Company was credited with the amount of the deposit in the closed bank, absorbed by the defendant Trust Company, the president of the Trust Company wrote a letter to the executors and trustees, advising them that the Trust Company had that day charged their account with the sum of $14,771.84, representing the amount due on the aforesaid promissory note. The actual charge against the account on the Trust Company's books was not made, however, until August 26th, 1931. The first notice that the executors and

trustees had of this charge against the bank account was a notice that their check for $5,291 to the order of the West End Building and Loan Association had been returned for insufficient funds, the Trust Company president's letter not having been received by the executors and trustees until after that event. The attorney executor immediately remonstrated with the officials of the bank against their action in charging the note to the executors' account, but to no avail; and no action was taken by the executors to compel the bank to return the amount so charged to their account.

"The defendant Trust Company by its answer admits that at the time this charge was made it had knowledge that the funds on deposit in the executors' account were trust funds of the estate. * * * Decedent's son and daughter, executor and executrix, resigned after their administration and account became the subject of criticism; and the attorney executor was removed by order of the Union county orphans court, and the complainant appointed as substituted administrator and trustee *cum testamento annexo* on November 6th, 1937. This bill was filed on January 19th, 1938.

"The defense to this action is estoppel, waiver, bar by the statute of limitations and set-off."

In its opinion the court considered the questions raised in the defense as above stated and concluded that the several defenses pleaded were unavailing to defendant and, "that no right of set-off existed when the note was charged against the executor's account. *Kanter* v. *Security Trust Co., 110 N. J. Law 361."* Thereupon it was decreed that defendant pay to complainant the sum of $14,771.84, with interest from August 21st, 1931, to the date of payment, and also allowed counsel fees.

Defendant argues that the decree appealed from was erroneously entered because, amongst other reasons, the court of chancery was without jurisdiction to entertain the cause. The point is well taken. The question of jurisdiction was not raised before the learned vice-chancellor and did not receive his consideration. Notwithstanding, it may be considered by this court on appeal. *Dickinson* v. *Plainfield, 116 N. J. Law 336, 337,* and cases there cited.

In *Pridmore* v. *Steneck, 122 N. J. Eq. 35, 39,* Mr. Justice Heher, speaking for this court, said:

"It is the settled rule that jurisdiction over the subject-matter of a cause cannot be granted or conferred by consent; and, in the application of this doctrine of waiver to cases of fraud, a distinction is of necessity to be made between a subject-matter fundamentally beyond the field of equitable cognizance, *e. g.,* the cancellation of a will obtained by fraudulent means, and the mere propriety of the exercise of general equity jurisdiction. As stated, the rule does not prevail in this state that, in such cases, the availability of an adequate legal remedy limits the jurisdiction itself, and is not to be classed as a mere element entering into the propriety of its exercise."

It seems clear that the subject-matter of this cause must be deemed to be fundamentally beyond the field of equitable cognizance. Under the bill of complaint the only relief sought, and as it seems the only relief available to the substituted administrator, is a judgment for the amount unlawfully deducted and retained by the bank. There are no other questions involved in the litigation. There is no relief afforded by the decree except the finding that the amount of the deduction is due the substituted administrator and that it shall be paid or execution shall issue, other than the award of counsel fee, which in a situation of this kind normally follows the decree. In this situation ample relief may be afforded in the law court. *Kanter* v. *Security Trust Co., supra.*

The late Chancellor Walker, then a vice-chancellor, said in *Earle* v. *American Sugar Refining Co., 74 N. J. Eq. 751, 761,* "While it is true that equity will make a precedent to fit a case novel in incident, yet in my judgment the facts of the case must come within some head of equity jurisprudence."

"The general rule is that the court of chancery will not take jurisdiction of a cause where no fraud or special equities appear and there is an adequate and complete remedy at law." *Bennett* v. *Bennett, 63 N. J. Eq. 306, 309,* and authorities there cited.

"Cases in which the remedy is a mere recovery of money do not ordinarily come under the concurrent jurisdiction. Where the primary right of the plaintiff is purely legal, arising either from the non-performance of a contract or from a tort, and the money is sought to be recovered as a debt or as damages, and the right of action is not dependent upon or connected with any equitable feature or incident, such as fraud, mistake, accident, trust, accounting, or contribution, and the like, full and certain remedies are afforded by actions at law, and equity has no jurisdiction; these are cases especially within the sole cognizance of the law. * * * whenever an action at law will furnish an adequate remedy, equity does not assume jurisdiction because an accounting is demanded or needed." *1 Pom. Eq. Jur. ¶ 178.*

There is nothing in the instant appeal suggesting that the cause is within any head of equity jurisprudence. The action, simply stated, was for the recovery of a judgment based upon a debt arising by implication of law from the unlawful appropriation by the bank of the funds of this estate for a debt due and owing to the bank from the decedent. The relation of a bank to a trustee-depositor is that of creditor and debtor (*New Amsterdam Casualty Co.* v. *National Newark and Essex Banking Co., 117 N. J. Eq. 264, 271; affirmed, 119 N. J. Eq. 540,* and this relationship, *per se,* gives rise to no equitable consideration.

The general rule is stated in *9 C. J. S., tit. "Banks and Banking" ¶ 404a:*

"Except in so far as statutes have made provision for summary proceedings on behalf of banks to enforce obligations held by them, the nature and form of the remedy available or to be pursued in an action by or against a bank is ordinarily determined by the rules which prevail with respect to actions generally. The suit in equity can generally be maintained against a bank only where there is some recognized ground for equitable relief, and there is no adequate remedy at law. *Assumpsit* or action *ex contractu* is ordinarily the proper remedy where the liability sought to be enforced is based upon an express or implied contract, and under such circumstances a tort action is improper if there is no tortious conduct of defendant upon which liability can be founded."

We are satisfied that, under the facts of this case, the court of chancery was without jurisdiction to entertain the cause and for this reason the decree appealed from is reversed.

HEHER, J. (Concurring.)

The issue mooted and resolved on the final hearing in chancery was whether the transaction in question, *i. e.,* the charging of the note to the executors' bank account, acquiesced in as it was by the executors, constituted "a preferential payment" of the obligation to the knowledge, actual or presumptive, of the defendant Trust Company, and therefore a "breach of trust" in which the latter was a participant; and I vote to reverse on the ground that the evidence does not sustain the conclusion of the learned vice-chancellor.

Concededly, the estate was solvent at the time. The transfer inheritance tax return, submitted on January 26th, 1932, exhibited a net taxable estate of $107,492.26. The assets consisted in part of the proceeds of insurance policies in excess of $106,000. Numerous claims, some in much larger amounts, were paid in full by the executors before and after the satisfaction of this particular debt from the executors' bank deposit.

The vice-chancellor found that, in the course of their administration, the executors "from time to time paid the most pressing of decedent's debts." But the defendant Trust Company's obligation was no less "pressing"; nor is this a differentiating circumstance. No recovery is sought from these satisfied creditors. They and the defendant are in the same category. The latter's status is not essentially different. They are *in pari passu.*

While the executors protested at the time the note was so charged to their account, the protest was not grounded in an asserted invasion of the rights of creditors, or a claimed interference with the orderly administration of the estate, but rather in the need—so runs the testimony of one of the executors—of "this money to buy malt and things of that type," by reason of which "it was wrong to charge it against" them. The subsequent insolvency, long after this transaction, was due to losses sustained by the executors in the operation of a brewery.

In my view, the executors' acquiescence is, in the special circumstances, binding upon the present administrator *de*

*bonis non.* The long delay (the satisfaction of the debt from the bank account was had on August 26th, 1931, while the bill herein was not filed until January 19th, 1938) has plainly disadvantaged the defendant Trust Company as regards the remedy for the enforcement of the note; and the executors' conduct in this regard is justly chargeable to their successor. It would be unconscionable now to decree the return of the money. Assuming that chancery is not under a duty so to decree in obedience or analogy to the statute of limitations, an estoppel by acquiescence or laches has arisen in favor of defendant. Moreover, there is no warrant in the circumstances for a decree directing the return of the full amount so applied to the satisfaction of this creditor's admittedly just obligation.

*For affirmance*—THE CHIEF-JUSTICE, PERSKIE, HETFIELD, WELLS, WOLFSKEIL, JJ. 5.

*For reversal*—PARKER, CASE, BODINE, DONGES, HEHER, PORTER, DEAR, RAFFERTY, HAGUE, JJ. 9.