The defendant, on July 22d 1941, served formal notice on the complainant that it would apply to the court on July 28th, 1941, to strike the bill of complaint upon the following grounds: (1) That it failed to set forth an equitable cause of action; (2) that complainant has a complete and adequate remedy at law. Subsequently, on July 24th, 1941, complainant's solicitors gave the solicitor of the defendant written notice that on July 28th, 1941, they would apply to the court for leave to voluntarily dismiss the bill of complaint without prejudice.
The facts as asserted in the bill and affidavits filed herein are to the effect that the complainant is a New Jersey corporation *Page 112 
having on deposit in the Hoboken branch of the defendant bank approximately $75,000; that it bought certain assets of another New Jersey corporation, Le Carbone Company, Inc., for $76,800 and gave in consideration therefore a series of twenty-four notes of $3,200 each. The notes are to run over a period of twenty-four consecutive annual payments commencing June 21st, 1941. Le Carbone Company, Inc., had issued and outstanding 10,000 shares of stock — 9,900 of which are owned by French "nationals" — Le Societe Anonyme Le Carbone, a French corporation domiciled in Paris, France. The Carbone Company, the complainant, also owes directly to Le Societe Anonyme Le Carbone the sum of $16,272.
The defendant, it is alleged, "blocked" the account of The Carbone Corporation and refused to permit complainant to withdraw any of the moneys deposited aforesaid until a license was issued to complainant by the Secretary of the United States Treasury or by the Federal Reserve Bank permitting it to make withdrawals of the funds so deposited.
The bill prays for an order restraining the defendant from interfering with complainant's right to withdraw the funds from the account.
On July 15th, 1941, an order was issued directing the defendant to show cause on July 21st, 1941, why the defendant should not be restrained in accordance with the prayer of the bill. On the day last aforesaid the argument on the order to show cause was heard before Vice-Chancellor Fielder, who dismissed the order to show cause for the declared reason that this court was without jurisdiction to entertain the cause of action, and that the complainant's remedy was at law.
Five days prior to the hearing of the defendant's motion herein, July 28th, 1941, the defendant in conformity with Chancery rule 116, filed with this court an abbreviation of the pleadings or a state of case with a statement of the material points, together with citation of authorities to sustain the points upon which it relied.
The motions of both parties were heard on the day mentioned. The defendant pressed its motion for a dismissal of the bill with prejudice. It contended that its motion, being in effect a demurrer, was a reply or an answer, and a general *Page 113 
appearance to the suit. I am satisfied its contention is correct.Albert v. Clarendon Land Investment and Agency Co., 53 N.J. Eq. 623;23 Atl. Rep. 8; Van Dyne v. Vreeland, 11 N.J. Eq. 370.
The complainant argued for leave to dismiss voluntarily the bill without prejudice.
The defendant asks for counsel fees and costs. The complainant opposes an allowance of counsel fees, claiming that its application for a voluntary dismissal of the complaint bars defendant's claim for a counsel fee. R.S. 2:29-130.
The two motions will be considered in their order of service.
The defendant argues that this court is without jurisdiction to entertain this suit because complainant's account has been "blocked" by executive orders of the President of the United States: the pertinent parts of which are as follows:
Executive Order No. 8405 (May 10th, 1940) Amendment of Executive Order No. 8389 of April 10th, 1940, amending Executive Order No. 6560, dated January 15th, 1934.
"Section 9. Notwithstanding any of the provisions of sections 1 to 8, inclusive, of this Order, all of the following are prohibited, except as specifically authorized in regulations or licenses issued by the Secretary of the Treasury pursuant to this Order, if involving property in which Norway or Denmark or any national thereof has at any time on or since April 8th, 1940, had any interest of any nature whatsoever, direct or indirect, or if involving property in which the Netherlands, Belgium or Luxembourg or any national thereof has at any time on or since May 10th, 1940, had any interest of any nature whatsoever, direct or indirect:
"B. All payments by or to any banking institution within the United States;
"E. All transfers, withdrawals, or exportations of, or dealings in, any evidences of indebtedness or evidences of ownership of property by any person within the United States; and
"F. Any transaction for the purpose or which has the effect of evading or avoiding the foregoing prohibitions."
Executive Order No. 8446 (June 17th, 1940) Amendment of Executive Order No. 8389 of April 10th, 1940, as amended.
"By virtue of the authority vested in me by section 5 (b) of the Act of October 6th, 1917 (40 Stat. 411), as amended, and by virtue of all other authority vested in me, I, Franklin D.Roosevelt, President of the United States of America, do hereby amend Executive Order No. 8389 of April 10th, 1940, as amended, so as to extend all the provisions thereof to, and with respect to, property in which France or any national thereof has at any time on or since June 17th, 1940, had any interest of any nature whatsoever, direct or indirect; except that, in defining `France' and `national' of France the date `June *Page 114 
17th, 1940,' shall be substituted for the dates appearing in the definitions of countries and nationals thereof."
Executive Order No. 6560 (January 15th, 1934) Regulating transactions in foreign exchange, transfers of credit, and the export of coin and currency.
"Section 3. Licenses. The Secretary of the Treasury, acting directly or through any agencies that he may designate, and the Federal reserve banks acting in accordance with such rules and regulations as the Secretary of the Treasury may from time to time prescribe, are hereby designated as agencies for the granting of licenses as hereinafter provided. Licenses in foreign exchange, transfers of credit, and exports of currency (other than gold certificates) or silver coin in such specific cases or classes of cases as the Secretary of the Treasury may determine in regulations prescribed hereunder and rulings made pursuant thereto."
Executive Order No. 8785 (June 14th, 1941) Regulating transactions in foreign exchange and foreign-owned property, providing for the reporting of all foreign-owned property, and related matters.
"Section 5.
"C. The term `person' means an individual, partnership, association, corporation, or other organization.
"E. The term `national' shall include,
"(ii) Any partnership, association, corporation or other organization, organized under the laws of, or which on or since the effective date of this Order had or has had its principal place of business in such foreign country, or which on or since such effective date was or has been controlled by, or a substantial part of the stock, shares, bonds, debentures, notes, drafts, or other securities or obligations of which, was or has been owned or controlled by, directly or indirectly, such foreign country and/or one or more nationals thereof as herein defined.
"(iv) Any other person who there is reasonable cause to believe is a `national' as herein defined.
"In any case in which by virtue of the foregoing definition a person is a national of more than one foreign country, such person shall be deemed to be a national of each such foreign country. In any case in which the combined interests of two or more foreign countries designated in this Order and/or nationals thereof are sufficient in the aggregate to constitute, within the meaning of the foregoing, control or 25 per centum or more of the stock, shares, bonds, debentures, notes, drafts, or other securities or obligations of a partnership, association, corporation or other organization, but such control or a substantial part of such stock, shares, bonds, debentures, notes, drafts, or other securities or obligations is not held by any one such foreign country and/or national thereof, such partnership, association, corporation or other organization shall be deemed to be a national of each of such foreign countries. The Secretary of the Treasury shall have full power to determine that any person is or shall be deemed to be a `national' within the meaning of this definition, and the foreign country of which such person is or shall be deemed to be a national. *Page 115 
Without limitation of the foregoing, the term `national' shall also include any other person who is determined by the Secretary of the Treasury to be, or to have been, since such effective date, acting or purporting to act directly or indirectly for the benefit or under the direction of a foreign country designated in this Order or national thereof, as herein defined."
The defendant takes the position that Le Carbone Company, Inc., sold its assets to The Carbone Corporation for the purpose of evading or avoiding the provisions of the executive orders, and consequently, the account should be "blocked" because of the provisions of Executive Order No. 8405, subsection 9-F. The defendant also contends that the complainant is a French "national," because a substantial part of its obligations were owned by a French "national" — Le Carbone Company, Inc. (Executive Order No. 8785, section 5, sub-section E (ii).)
It is asserted that Le Carbone Company, Inc., is a French "national" because 9,900 shares of its total number of 10,000 shares are owned by French "nationals."
The Secretary of the Treasury of the United States appears to possess the power to determine who is a "national" and who is not a "national" in the situation here existing. Perry v. UnitedStates, 294 U.S. 330; Norman v. Baltimore and Ohio RailroadCo., 294 U.S. 240; Nortz v. United States, 294 U.S. 317;Uebersee Finanz-Korporation, c., v. Rosen, 83 Fed. Rep.
2d 225; Smith v. Witherow, 102 Fed. Rep. 2d 638.
In Uebersee Finanz-Korporation, c., v. Rosen, supra (atp. 230 ¶¶ 10 and 11), the court said:
"* * * Consequently a bill in equity based upon the unconstitutionality of the act and the unique value of the gold must fail, since there is an adequate remedy at law to recover its value in legal tender. Accordingly, we think that there was no ground for bringing a suit in equity. Nor do we see that there can be a recovery at law, since Ladenburg, Thalmann Co. are bound to deliver the gold pursuant to the order of the Secretary of the Treasury."
This case also held that the bill of a foreign corporation to restrain its domestic bailee from turning its gold over to the *Page 116 
Treasury pursuant to an order of that department, was insufficient to state a cause in equity as it had an adequate remedy at law to recover the value of the gold in legal tender.
The defendant in the instant case is very properly observing the aforesaid executive order of the President of the United States. Were it to ignore the order, it would become liable to the imposition of a severe penalty. The complainant is entitled to apply to the Secretary of the Treasury of the United States, or to the Federal Reserve Bank for a license to withdraw its funds. That method of procedure is made quite clear in the executive orders. For some unexplained reason, the complainant, up to the present, does not choose to follow that course. It seems to me to be more feasible than a litigated suit.
Our Court of Errors and Appeals in Stein v. Elizabeth TrustCo., 126 N.J. Eq. 399; 9 Atl. Rep. 2d 672, said in part:
"There is nothing in the instant appeal suggesting that the cause is within any head of equity jurisprudence. The action, simply stated, was for the recovery of a judgment based upon a debt arising by implication of law from the unlawful appropriation by the bank of the funds of this estate for a debt due and owing to the bank from the decedent. The relation of a bank to a trustee-depositor is that of creditor and debtor. NewAmsterdam Casualty Co. v. National Newark and Essex BankingCo., 117 N.J. Eq. 264, 271; affirmed, 119 N.J. Eq. 540, and this relationship, per se, gives rise to no equitable consideration.
"The general rule is stated in 9 C.J.S. tit. `Banks andBanking' ¶ 404a: * * *."
A court of equity will not entertain a suit to recover a specific sum of money where no special equities appear. Davis
v. Headley, 22 N.J. Eq. 115.
In the case of the American Safety Razor Corp. v. Weissbard,125 N.J. Eq. 189; 4 Atl. Rep. 2d 303, complainant applied for a dismissal of its bill of complaint without prejudice. The defendant resisted the motion and moved to dismiss the bill with prejudice to the institution of a new suit on the issues raised by the bill, answer and replication. *Page 117 
The Vice-Chancellor before whom the case was argued, denied the complainant's application and granted the defendant's motion, and allowed the defendant's solicitor costs of suit to be taxed and a counsel fee. The court in that case among other things said:
"While it is true that complainant initiated the proceedings resulting in the dismissal of its bill of complaint before trial, we do not regard it as a voluntary dismissal by complainant within the meaning of 2:29-130 (supra). What complainant sought was not an outright dismissal — but a conditional one."
In the instant case the defendant took the initiative by serving a notice of motion to strike the complaint. Not until after the complainant received the notice to strike the bill did it make a move to apply for a voluntary dismissal of its complaint. Complainant's motion under the circumstances, I do not regard as a "voluntary" one within the meaning of R.S.2:29-130, which reads:
"Upon complainant's dismissing his own bill in equity, or the defendant's securing a dismissal of the same for want of prosecution, the complainant in the suit shall pay to the defendant his costs to be taxed."
See, also, R.S. 2:29-131, as follows:
"In any cause, matter or proceeding in the court of chancery the chancellor may make such allowances by way of counsel fee to the party obtaining the order or decree as shall seem to him to be reasonable and proper, * * *.
"The chancellor may provide for the inclusion of such allowances in the taxable costs, * * *."
The complainant's application was not an application for "an outright dismissal but a conditional one." American Safety RazorCorp. v. Weissbard, supra; Albert v. Clarendon LandInvestment and Agency Co., supra.
This court is without jurisdiction in the instant suit.
I feel that the defendant's motion, which is the first of the two motions presented, should take precedence over the complainant's motion. That motion should prevail. Therefore, the bill is dismissed with prejudice. A counsel fee of $100 and costs are allowed defendant's counsel. R.S. 2:29-131. *Page 118